UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LAWRENCE J. MILLER, JR.,**

    Plaintiff,

v.                                              Case No: 5:25-cv-27-WFJ-PRL

**RODRIGUEZ and CUNNINGHAM,**

    Defendants.

___

**ORDER**

This matter comes before the Court on Defendants Jose Rafael Rodriguez, M.D. and Duane Cunningham, APRN's Amended Motion to Dismiss. (Doc. 24). Plaintiff responded, Doc. 37, and Defendants Replied, Doc. 39. After briefing by the parties, the Court grants the motion.

**I. Allegations of the Second Amended Complaint (Doc. 11)[1]**

Plaintiff has a preexisting back injury stemming from a 2002 fall and surgery. (Doc. 11 at 12). During a 2017 incarceration at Lake Butler Reception Center Plaintiff was provided a cane and pain medication due to his back injury. Plaintiff's "cane pass, medication, and lower bunk pass" were renewed annually through April 2024 when he was released from custody. *Id.* On September 8, 2024, Plaintiff was taken into

---

[1] Plaintiff's initial complaint was docketed on January 13, 2025. (Doc. 1). Plaintiff signed the complaint on January 4, 2025. (Doc. 1 at 11).

custody at the Marion County Jail. *Id*. Plaintiff arrived at that jail with his cane and the officer told booking that Plaintiff needed the cane to walk. He was placed in "med-pod" pending approval from medical for the cane. He was eventually release from "med-pod" and sent to Golf/Alpha (GA) without a cane. *Id*.

Plaintiff has filed "numerous sick calls" requesting medication and a cane, in addition to sending letters to Dr. Rodriguez and Maria Torres, the CEO of Heart of Florida Health Center. *See* Doc. 11 at 13; Doc. 37 at 2. Torres visited Plaintiff and told him that he would be fitted for a cane and to explain everything to Dr. Rodriguez. (Doc. 11 at 13). Plaintiff saw Dr. Rodriguez and explained his condition. Dr. Rodriguez told Plaintiff "that is not how things are done here" and denied Plaintiff medication for his chronic pain, denied the cane, and ordered an x-ray. Dr. Rodriguez refused to contact any of institutions Plaintiff was previously held at regarding his cane.

Plaintiff was "eventually" seen by Cunningham, who told him that he had a crooked screw in his back but "there was nothing wrong with" him. *Id*. at 13. Cunningham denied Plaintiff a cane and medication for his chronic pain and told Plaintiff to leave his office when Plaintiff asked for them. Plaintiff has subsequently submitted requests to speak with a sergeant about his lack of medical care, but no one has responded. *Id*. He has also filed requests to file a formal grievance, but no one responded.

Plaintiff claims that Dr. Rodriguez and Cunningham were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. *Id*. at 12.

## II. Standard of Review

A *pro se* complaint is entitled to a generous interpretation. *Haines v. Kerner*, 404 U.S. 519 (1972). On a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Court must view the allegations in the complaint in the light most favorable to the plaintiff, and consider the allegations in the complaint, including all reasonable inferences, as true. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Even so, the complaint must meet certain pleading requirements. Under Rule 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" is subject to dismissal. In reviewing a motion to dismiss, a court considers the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). To withstand a motion to dismiss, the complaint must state a claim to relief that is plausible on its face; that is, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Further, under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If the court cannot "infer more than the mere possibility of misconduct," the complaint does not show entitlement to relief. *Iqbal*, 556 U.S. at 679.

### III. Discussion

Defendants assert that the Second Amended Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit as required by the Prison Litigation Reform Act ("PLRA").

**A. PLRA Exhaustion**

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court of the United States has held that exhaustion requirement in § 1997e requires "proper exhaustion," such that "a prisoner must exhaust all prescribed administrative remedies available to him … before filing a lawsuit to seek judicial

redress." *Garcia v. Glover*, 197 F. App'x 866, 868 (11th Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "There is no question that exhaustion is mandatory under the [Prison Litigation Reform Act of 1995 ("PLRA")] and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

The exhaustion requirement is an affirmative defense, and a prisoner is not required to plead or demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216. However, a complaint may be dismissed under 28 U.S.C. § 1915A(b) if lack of exhaustion appears on the face of the complaint. *Id*. at 214-15 (noting that the Federal Rules of Civil Procedure generally apply to section 1997(e) and Rule 12(b)(6) allows for dismissal when an affirmative defense appears on the face of the complaint).

Although the PLRA makes clear that exhaustion of administrative remedies is mandatory, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856, 1858-60 (2016). The Supreme Court has outlined three circumstances under which administrative remedies could be "unavailable," meaning that an inmate would not be required to exhaust them. *See id*. at 1859. First, if, despite attempts by prison inmates to file grievances, "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates," that procedure is a "dead end" and incapable of providing relief. *Id*. Second, an administrative remedy is unavailable if it is so opaque that it is unknown or unknowable to the inmates. *See id*. at 1859–60; *Goebert v. Lee County*, 510 F.3d 1312, 1323–1324 (11th Cir. 2007). Third, where prison employees prevent inmates from

taking advantage of grievance procedures through "machination, misrepresentation, or intimidation," those procedures are unavailable as well. *See Ross*, 136 S. Ct. at 1860.

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. *Bryant*, 530 F.3d at 1374-75 (citation omitted). Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. *See Turner*, 541 F.3d at 1081. In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id*. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id*. at 1082–83; *see also id*. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015); *see Pavao v. Sims*, 679 F. App'x 819, 823–24 (11th Cir. 2017) (per curiam).

### B. Marion County Jail Grievance Procedure

The Marion County Jail provides an internal grievance procedure for its detainees and inmates. Section V of the Inmate Rules and Regulation Handbook describes the process. *See* Doc. 24-1 at 21–22. "All inmates are required to address any problems in an informal manner by submitting an Inmate Request Form before resorting to a formal grievance." *Id.* at 21. If an inmate is unable to resolve his concern through the informal channels, the Handbook, in part, instructs him to:

1. Obtain an Inmate Request Form from the on-duty Detention Deputy.

2. Fill out the form in its entirety requesting to speak to the Sector Sergeant briefly describing the problem. Do not write in the lower portion of the form as this area is used to provide your response.

3. Upon the receipt of the Request Form, the Sector Sergeant will make personal contact with you and attempt to rectify the situation.
   a. If the Sector Sergeant handles the situation, the process ends here. The Sergeant will note the corrective action taken on the Inmate Request Form and give you the yellow copy.
   b. If the complaint is beyond the realm of responsibility for the Sector Sergeant, he/she will direct the inmate to the electronic grievance computer located in each pod.

(Doc. 24-1 at 21–22). The Handbook then describes the formal grievance and appeals processes. *Id.* at 22.

### C. Plaintiff's Exhaustion Efforts Under the PLRA

Defendants assert that Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit. *See* Doc. 24 at 4–6; Doc. 39 at 2–5. In support of their contention, Defendants reference Plaintiff's grievance attempts. On December

13, 2024, Plaintiff attempted to resolve his complaint informally by filling out an Inmate Request Form with an attached letter wherein he "express[ed] his protest" regarding being denied a cane and seeking assistance for his chronic pain. (Doc. 24-2 at 1–2). On December 31, 2024, Dr. Rodriguez responded:

> Review of your chart revealed that on 11/08/24 it was documented that Lancaster C.I. was contacted and staff there expressed you did not possess a pass for a cane there. You have also been evaluated multiple times by medical providers that have determined you do not meet medical criteria for a cane at this time. You may request a sick call if symptoms worsen.

*Id*. at 1. The next step in the grievance process would be to obtain an Inmate Request form from the on-duty Detention Deputy, fill out the form in its entirety requesting to speak to the Sector Sergeant. (Doc. 24-1 at 21). Defendants state that Plaintiff failed to proceed to and complete this step. (Doc. 24 at 6).

Plaintiff maintains he "did in fact try to properly exhaust administrative remedies …" (Doc. 37 at 1). He states that in October 2024 he filed a Request form to speak with a sergeant regarding the cane issue, but "never even [received] a [receipt] for his Request let alone was able to talk to a [sergeant] on this matter." *Id*. at 2. He then submitted the December 13, 2024 request. Plaintiff has attached a copy of the December 13, 2024 Inmate Request. (Doc. 37 at 8–9). Plaintiff also includes copies of Inmate Request Forms dated January 23, 2025 (Doc. 37 at 10) and February 5, 2025 (Doc. 37 at 11) wherein he attempted to speak with a sergeant.

In their Reply, Defendants note that because his initial complaint was docketed on January 13, 2025, he had to have completed the grievance process by then.[2] Plaintiff did not submit his Inmate Request Form seeking to speak with a sergeant until after this case had been initiated.

Accepting Plaintiff's factual allegations as true, the Second Amended Complaint is subject to dismissal for failure to exhaust administrative remedies. While Plaintiff claims he "did in fact exhaust all his administrative remedies prior to filing suit," *see* Doc. 37 at 5 (emphasis in original), the facts establish that he filed his initial complaint prior to filing his Inmate Request Form seeking to speak with a sergeant. *See* Doc. 1 at 11; Doc. 37 at 10. Plaintiff failed to exhaust his administrative remedies prior to bringing this action.

Defendants have met their burden in proving that Plaintiff has failed to exhaust his available administrative remedies before filing this lawsuit. *Woodford*, 548 U.S. at 93–94; *Jones*, 549 U.S. at 211. Therefore, Plaintiff did not fulfill the prerequisite to filing this action.

### IV. Conclusion

Accordingly, it is hereby

**ORDERED:**

---

[2] Under the "mailbox rule," a prisoner's filing is deemed filed on the date it was signed and delivered to authorities for mailing. *See Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999). Arguably, Plaintiff's initial complaint was filed on January 4, 2025, when he signed it. *See* Doc. 1 at 11. However, the Defendants don't argue this point, nor does it affect the outcome of their motion.

1. Defendants' Motion to Dismiss (Doc. 24) is **GRANTED**.

2. The Clerk of Court shall terminate any pending motions, enter judgment, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 4, 2025.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished to:**
Pro Se Parties
Counsel of Record